THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CR-00082-FL
No. 5:12-CV-00083-FL

| | |
|---|---|
| DERRICK JOMELL PERRY, | ) |
| | ) |
| Petitioner, | ) **ORDER AND** |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter comes before this court on the government's motion to dismiss [DE-159]

Petitioner Derrick Jomell Perry's ("Perry" or "Petitioner") motion [DE-151] under 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence. Perry responded to the government's motion [DE-168]

and additionally filed a motion to compel [DE-166], motion for a new trial and for appointment of

counsel [DE-170], and motion for leave to file an amendment to the § 2255 petition and for

appointment of counsel [DE-178]. The time for responding to the motions has expired; accordingly,

the motions are ripe for review. These motions were referred to the undersigned and are considered

here for disposition or as a recommendation to the District Court, as appropriate. *See* 28 U.S.C. §

636(b)(1)(A) & (B); Fed. R. Crim. P. 59(a) & (b)(1). For the reasons stated below, Petitioner's

motion to compel and motion to amend and for appointment of counsel are denied, and it is

recommended that the government's motion to dismiss be allowed and Petitioner's remaining

motions be denied.

## I. BACKGROUND

On March 23, 2006, Perry was indicted on two counts of distribution of more than five grams

of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), arising from controlled buys on May 5, 2005

(Count 1) and May 18, 2005 (Count 2), and one count of distribution of more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), arising from a controlled buy on June 9, 2005 (Count 3). [DE-1]. On September 27, 2006, a superceding indictment charged three additional counts in connection with evidence found during a search of Perry's home on May 21, 2004, to wit: possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 4); possession with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 5); and possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I) (Count 6). [DE-34].

Perry moved to suppress evidence of the marijuana and firearms found in his house and incriminating statements he made to officers during the May 21, 2004 search [DE-51], but the court denied Perry's motion by oral order on January 12, 2007, and the case went to trial. On January 19, 2007, a jury convicted Perry of distribution of more than five grams of crack cocaine (Count 2), possession with intent to distribute marijuana (Count 5), and possession of a firearm in furtherance of a drug trafficking crime (Count 6). [DE-93]. However, Perry was acquitted of one count of distribution of cocaine (Count 1), distribution of crack cocaine (Count 3), and possession with intent to distribute cocaine (Count 4). *Id.*

On July 20, 2007, Perry was sentenced to 170 months on Count 2, a concurrent 60 months on Count 5, and a consecutive 60 months on Count 6, for a total sentence of 230 months. *Id.* Perry appealed his conviction and sentence. [DE-90]. On March 23, 2009, the Fourth Circuit affirmed Perry's convictions, but vacated his sentence and remanded for resentencing in light of *Kimbrough v. United States*, 552 U.S. 85 (2007). *See United States v. Perry*, 560 F.3d 246 (4th Cir. 2009). On April 14, 2010, Perry was resentenced to 110 months on Count 2, a concurrent 60 months on Count

2

5, and a consecutive 60 months on Count 6, for a total sentence of 170 months. [DE-134]. Perry

again appealed his sentence [DE-130], which was affirmed by the Fourth Circuit. *See United States

v. Perry*, 429 F. App'x 287 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 388 (2011).[1] On February 21,

2012, Perry timely filed the instant petition under 28 U.S.C. § 2255 to vacate, set aside, or correct

his sentence. [DE-151].

## II. LEGAL STANDARDS

### A.     Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the "'[f]actual allegations must be

enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim

to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616

n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also

Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework

of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555

(citations omitted). In considering a motion to dismiss, the court assumes the truth of all facts

alleged in the complaint and the existence of any fact that can be proved, consistent with the

complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a

---

[1] On August 5, 2013, the court granted Perry's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), and reduced the 110-month sentence on Count 2 to 72 months, resulting a total sentence of 132 months. [DE-174].

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## B. 28 U.S.C. § 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, 28 U.S.C. § 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). However, where a petition seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.* "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

4

## III. DISCUSSION

### A.    Motion for Leave to Amend and for Appointment of Counsel

Perry seeks leave to amend his petition to include a claim that his sentence should be reduced, pursuant to *Alleyne v. United States*, — U.S. —, 133 S. Ct. 2151 (2013), asserting that the use of acquitted conduct for sentencing purposes was improper and that Perry had a right to a jury determination with respect to facts used by the court in increasing his sentence. [DE-178-1]. Perry also seeks appointment of counsel as the court deems necessary. The government did not respond to Perry's motion.

The amendment of § 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). A party may amend a pleading once as a matter of right prior to the filing of a responsive pleading. Fed. R. Civ. P. 15(a). Otherwise, a party may amend a pleading only by leave of court. *Id.* Absent bad faith, undue prejudice to the opposing party, or futility of amendment, leave to amend under Rule 15(a) shall be freely given. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The *Alleyne* case, on which Perry's argument relies, is of no assistance to him here. Alleyne was charged with multiple offenses, including using or carrying a firearm in relation to a crime of violence, § 924(c)(1)(A), which carries a five (5) year mandatory minimum. *Id.* However, the mandatory minimum is increased to seven (7) years if the firearm is brandished and ten (10) years if the firearm is discharged. 18 U.S.C. § 924(c)(1)(A)(ii) & (iii). The jury found that Alleyne had "'[u]sed or carried a firearm during and in relation to a crime of violence,' but did not indicate a finding that the firearm was '[b]randished.'" *Alleyne*, 133 S. Ct. at 2156. At sentencing, the district court found that "brandishing was a sentencing factor that the court could find by a preponderance

5

of evidence without running afoul of the Constitution" and sentenced Alleyene to seven (7) years on the § 924(c) count, which was affirmed by the Fourth Circuit. *Id.* The Supreme Court reversed, holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" to protect a defendant's Sixth Amendment right to a trial by jury and right to due process. *Id.* at 2155-56.

Here, Perry contends that attributing drug weight to him based on acquitted conduct violates *Alleyne*. To the contrary, it is well-settled that acquitted conduct may be used to establish a defendant's offense level and enhance a sentence if the sentencing court finds that the conduct has been proven by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 155-56 (1997). *Alleyne* only prohibits fact finding by the court that increases the *statutory mandatory minimum*, not the defendant's guideline range. *See Dyson v. United States*, No. 5:11CV17, 2013 WL 4520034, at *2 (N.D.W.Va. Aug. 26, 2013) ("[D]eterminations as to appropriate guideline range are rightfully made by the sentencing judge, and the Supreme Court's decision in *Alleyne* does not effect the judge's authority in this regard.") (citing *Alleyne*, 133 S.Ct. at 2163; *United States v. Booker*, 543 U.S. 220 (2005)). The jury found Perry guilty of distribution of more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2), which carries a mandatory minimum of five (5) years' imprisonment, and the attribution of additional drug weight based on the acquitted conduct charged in Counts 1, 3 and 4 did not increase the mandatory minimum to which Perry was subject. Accordingly, the court did not violate Perry's Constitutional rights by considering drug weight based on acquitted conduct at sentencing, and amendment of Perry's § 2255 petition to so allege would be futile.

Finally, Perry is not entitled to counsel in his § 2255 action. *See King v. United States*, No.

6

4:05-CR-111-D-1, 2007 WL 3541891, at *4 (E.D.N.C. Nov. 14, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (finding no right to counsel on collateral review of a conviction)). Perry has failed to show that the "interests of justice" require that he be appointed counsel. *Id.* (citing 18 U.S.C. § 3006A(a)(2); *United States v. Riley*, 21 F. App'x 139, 141 (4th Cir. 2001)).

Therefore, Perry's motion to amend and for appointment of counsel is denied.

**B.    Motion to Dismiss § 2255 Petition**

Perry seeks relief under § 2255, alleging that he received ineffective assistance of counsel. Pet'r's Mot. [DE-151] ¶ 12. To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to the prejudice component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *See Strickland*, 466 U.S. at 697 (explaining "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry if the defendant makes an insufficient showing on one").

Perry contends his trial counsel rendered ineffective assistance in the following ways:

7

1)      He did not undertake proper pre-trial investigation, trial preparation, and cross examination of the government's witnesses in respect to the matters listed below:

      a)      Petitioner's home surveillance system, of which no review of video tapes therefrom was conducted, and relevant evidence was not used for rebuttal, or otherwise by counsel thereby attacking the use of such system as "evidence" of drug trafficking;

      b)      Petitioner's home scale, which was used by the government as "evidence" of drug trafficking; and

      c)      Petitioner's radio scanner, which was also used by the government as "evidence" of drug trafficking.

2)      Counsel failed to offer testimony which would have supported the Petitioner's reasonable use of marijuana, and rebutted the government's allegations that he was involved in "trafficking."

3)      Counsel failed to adequately defend against the gun enhancement charge by not properly cross examining the government's witnesses, and their use of the information received from the "confidential informer."

4)      Most egregiously counsel failed to plead and establish an alibi through the use of direct testimony and cross examination, thereby refuting the testimony offered by the government's witnesses to Petitioner's alleged illegal acts.

5)      Counsel failed to properly challenge the use of the government's "confidential informant" for the purpose of establishing any trafficking on the part of Petitioner, and specifically, any "hand to hand" transaction, or presence of a firearm during his period of observation.

Pet'r's Mem. [DE-151-1] at 9-10.[2] Perry further contends that he raised with the court his dissatisfaction with his counsel on at least three occasions by filing motions on August 25, 2006 [DE-29], November 6, 2006 [DE-43], and April 6, 2007 [DE-77], and that the court's appointment of new counsel prior to sentencing was an acknowledgment of the alleged ineffective assistance.

---

[2] Where as here, the original document page number does not correspond to the CM/ECF page number, the CM/ECF page number is referenced.

Pet'r's Mem. at 8.

## 1.     Failure to Challenge Evidence

Perry first contends that his trial counsel failed to sufficiently investigate and/or challenge certain evidence used against him at trial, specifically Perry's home surveillance system, digital scales, and radio scanner. Pet'r's Mem. at 10-13. Perry argues that his counsel failed to properly question the government's witnesses to cast doubt on their testimony that Perry's possession of a home surveillance system, digital scales, and a radio scanner was evidence of drug trafficking. "In evaluating a claim for ineffective assistance on the grounds that trial counsel decided not to investigate a particular issue, that decision must be 'directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Hinton v. United States*, No. 2:06-CR-15-BO-1, 2011 WL 4949977, at \*4 (E.D.N.C. Oct. 18, 2011) (citations omitted), *appeal dismissed*, 472 F. App'x 162 (4th Cir. 2012). Further, the Fourth Circuit has recognized that where "the failure to call certain witnesses and the questioning of other witnesses all relate to tactical decisions made by counsel," it is improper for the court "to second-guess a trial attorney's tactical decisions, *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977), except when it appears that the attorney's performance was not reasonable considering all the circumstances." *United States v. Nealy*, 840 F.2d 11, 1988 WL 12850, at \*6 (4th Cir. 1988) (unpublished op.) (citing *Strickland*, 466 U.S. at 690).

Perry asserts that his counsel "did not properly cross examine either witness," regarding the home surveillance system found during execution of the search warrant. Agent Cottrell testified as to his discovery of Perry's home surveillance system and Perry does not appear to dispute that he did in fact have such a system in his home, so it is unclear what Perry believes counsel should have done

9

in this regard. Further, just prior to the government's questioning of Agent Gay regarding the common use of home surveillance systems by drug traffickers, Perry's counsel objected to the government's question to Agent Gay regarding whether a police scanner would be of assistance to a drug trafficker, and that objection was overruled by the court. Trial Tr. [DE-105] 186:23-187:2. Therefore, counsel's failure to make the same objection moments later with respect to the home surveillance system is not unreasonable. Perry also asserts that his counsel was deficient in not reviewing the home surveillance tapes. However, Perry's counsel cross-examined Agent Jackson with respect to law enforcement's failure to review the tapes, and Perry himself acknowledged that the tapes failed to show anything. *Id.* [DE-106] 103:20-25. Furthermore, Perry's contention that the surveillance tapes would have exonerated him, because they showed no criminal activity, and that his counsel was deficient in raising the point, is belied by the eyewitness testimony of law enforcement regarding numerous vehicles being driven to the back of Perry's house and leaving within five to ten minutes, *id.* [DE-104] 15:1-18:8; a confidential informant's testimony that he purchased drugs from Perry at his home, *id.* [DE-106] 32:10-64:24; and Perry's written statement to law enforcement that Perry sold marijuana and a small amount of powder, *id.* [DE-104] 31:16-35:11.

Next, Perry contends that counsel failed to effectively cross-examine the government's witness regarding the digital scales found in Perry's home and should have attempted to establish that the scales were used for Perry's gold plating operation and that one of the scales did not work. However, as Perry acknowledges, his counsel did cross examine the government's witness regarding the condition of the scales and potential legitimate use of digital scales, eliciting testimony that there was a paint like substance on the side of the scales that indicated they were used for something other

10

than weighing drugs. *Id.* [DE-105] 189:15-190:20. Similarly, Perry contends that counsel should have established that his radio scanner was missing a component that would allow it to receive police radio communications. However, counsel did cross-examine the government's witness regarding the condition of the scanner, eliciting testimony that it was found on top of the refrigerator, may not have been plugged in, looked old, and that it was not tested to determine if it worked. *Id.* 140:13-23. Accordingly, counsel was not deficient in addressing evidence regarding Perry's home surveillance system, digital scales, and radio scanner.

Furthermore, even assuming, *arguendo*, that counsel was deficient in addressing the surveillance system, digital scales, and radio scanner, there is no evidence that the deficiency prejudiced Perry's defense. With respect to prejudice, Perry argues that the surveillance tapes showed no criminal activity and, thus, would have exonerated Perry and would have established a time line important to his alibi defense. However, in addition to testimony that home surveillance systems, digital scales, and radio scanners are used in the operations of drug traffickers, *id.* [DE-105] 186:22-17, 189:1-10, there was a substantial amount of additional evidence presented to the jury regarding Perry's drug dealing: (1) officers conducted three hours of visual surveillance of Perry's house, during which time they observed ten vehicles being driven to the back of his house and leaving within five to ten minutes, Perry repeatedly walking out of his house, into the woods, and back to his house, and officers found a bucket containing a container with 73.9 grams of powder cocaine and a quantity of marijuana in the woods, *id.* [DE-104] 15:1-18:8, 62:11-68:19, 120:1-125:16; (2) officers found a brick of marijuana weighing approximately 373.5 grams in Perry's kitchen, *id.* at 120:1-125:16; (3) at trial an informant who made three controlled buys of crack cocaine from Perry testified that he had purchased crack, powder cocaine, and marijuana from Perry

11

both at Perry's house and business over the course of four years, *id.* [DE-106] 32:10-64:24; and (4) Perry's written statement to law enforcement that Perry sold marijuana and a small amount of powder, *id.* [DE-104] 31:16-35:11. There is no reasonable probability, based on this other evidence introduced at trial, that the result would have been different if Perry's counsel had further challenged the witnesses' testimony to attempt to establish Perry's alleged legitimate uses of the surveillance systems, digital scales, and radio scanner found in Perry's home. *See, e.g., United States v. Harris*, 14 F. App'x 144, 145 (4th Cir. 2001) (finding no prejudice from allegedly deficient performance where there was ample other evidence on which to convict petitioner). Accordingly, Perry has failed to demonstrate prejudice from the alleged ineffective assistance of counsel in this regard.

## 2. Use of Marijuana

Perry next contends that his counsel failed to offer testimony which would have supported Perry's "reasonable use" of marijuana and rebutted the government's allegations that he was involved in "trafficking." Pet'r's Mem. at 13-15. Specifically, Perry argues that his counsel should have elicited testimony that Perry had been in drug treatment for marijuana use, that marijuana can be used for pain management, and that there was no evidence of packaging, distribution or sale of drugs found in Perry's house. Again, as Perry acknowledges, counsel did in fact cross-examine the government's witness in this vein by eliciting testimony with respect to the lack of drug residue, packaging materials, or cash found at Perry's house and that there were materials found at the house consistent with drug use, such as marijuana pipes in Perry's bedroom. Trial Tr. [DE-105] 137:2-139:19. Perry further asserts that counsel should have used Rules 401 and 702 of the Federal Rules of Evidence to "demand[] the government prove the 'particular acts of distribution,'" Pet'r's Mem. at 15, but it is unclear how these rules relate to the alleged deficiency on the part of counsel.

12

Accordingly, Perry has failed to demonstrate that counsel was deficient in demonstrating that Perry was merely a drug user and not a drug trafficker.

Additionally, Perry has failed to demonstrate that he was prejudiced by the alleged deficiency. Contrary to Perry's assertion, the government did present evidence that Perry was a drug dealer, such as Perry's written confession to selling marijuana and small amounts of powder, Trial Tr. [DE-104] 31:16-35:11, and the testimony of a confidential informant regarding three controlled buys he made from Perry, *id.* [DE-106] 32:10-64:24. Accordingly, there is no reasonable probability that further emphasis on Perry's drug use by counsel would have beget a different result.

### 3. § 924(c) Charge

Perry next contends that counsel failed to adequately defend against the § 924(c) gun enhancement charge by not properly cross examining the government's witnesses and the use of the information received from the confidential informer. Pet'r's Mem. at 15-18. Perry argues that his counsel should have established through use of a diagram that the firearms were found in a closet, that the firearms were never seen by the confidential informant, and that there was no nexus between the firearms and the drugs. Here, it appears that Perry attempts to relitigate his argument made on appeal–that there was insufficient evidence that the firearms found in the house were possessed in furtherance of a drug trafficking crime–now casting the argument as an ineffective assistance claim. *See Smith v. United States*, No. 5:09-CR-00176-FL-1, 2012 WL 7959199, at *3 (E.D.N.C. Mar. 26, 2012) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (stating a defendant may not "recast, under the guise of a collateral attack, questions fully considered by this court [on direct appeal]")), *report and recommendation adopted*, No. 5:09-CR-176-FL-1, 2013 WL 1615588 (E.D.N.C. Apr. 15, 2013). The Fourth Circuit rejected Perry's argument on direct appeal,

13

concluding that there was "substantial evidence" to support the jury's determination on the § 924(c) charge. *Perry*, 560 F.3d at 254. The Fourth Circuit noted that Perry's house was "a relatively small, double-wide trailer with three bedrooms" and that "[a]t least one of the firearms in the bedroom was loaded and in close proximity to drug paraphernalia, and the firearms were easily accessible in the event needed," *id.* at 255, belying Perry's assertions that counsel presenting a diagram of Perry's house would have shown a lack of nexus between the firearms and the drugs.

Perry also asserts that the court's appointment of new counsel to Perry post-trial and prior to sentencing indicates the court found Perry's counsel to be ineffective. Perry filed three motions for new counsel prior to sentencing, but withdrew his first two motions for new counsel in open court during his respective September 20, 2006 and December 13, 2006 arraignment proceedings, which weighs against a finding that Perry or the court believed counsel to be ineffective at that time. [DE-33, -53]. Further, while the court did appoint new counsel prior to sentencing, granting Perry's trial counsel's motion to withdraw [DE-80], there is no indication in the court's order that it found trial counsel's representation deficient. [DE-81]. Accordingly, the court's replacement of counsel prior to sentencing is not evidence of counsel's ineffective representation of Perry on the § 924(c) charge.

### 4. Alibi

Perry next contends that counsel failed to plead and establish an alibi through the use of direct testimony and cross examination to refute the testimony offered by the government's witnesses as to Perry's alleged illegal acts. Pet'r's Mem. at 18-22. Perry asserts that he was not present during law enforcement's surveillance of his home prior to the execution of the search warrant and that, therefore, he could not have been the person the surveillance team saw exiting Perry's house and

14

walking to the woods and back when vehicles arrived, presumably engaged in drug transactions. Perry argues that his counsel was deficient in not challenging the testimony of the government witness who identified Perry as being at the house during the surveillance period and not presenting a witness to testify that Perry left his house prior to execution of the search warrant.

The testimony of these witnesses–that Perry was observed at his house, appearing to be engaged in drug transactions, prior to the warrant's execution and that Perry was not present at his house at the time of the warrant's execution–is not inherently contradictory as Perry argues. The officer conducting surveillance did not testify as to what time he observed Perry at the home and Perry does not deny being there prior to 10:30 a.m. Likewise, the Affidavit of James Massenburg [DE-151-2], submitted by Perry in support of his petition and claiming that Perry left his home at 10:30 a.m. and was returned by law enforcement to the home later that afternoon, does not contradict testimony that Perry was seen at his home acting in a manner consistent with dealing drugs some time prior to execution of the search warrant. *See Fields v. United States*, No. 5:08-CR-395-FL-1, 2013 WL 5707255, at \*3 (E.D.N.C. Oct. 21, 2013) ("'[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risk, and one to which we must afford enormous deference.' *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quotations omitted). These decisions are 'virtually unchallengeable.' *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quotations omitted).").

Further, counsel did establish through cross examination that the surveillance team failed to make notes regarding the surveillance, including license plate numbers of the vehicles visiting Perry's home, failed to stop the vehicles leaving Perry's home, and that Perry was not present at the residence when law enforcement arrived to execute the search warrant. Trial Tr. [DE-104] 36:9-

15

38:3; [DE-105] 144:2-23. That the jury did not draw the conclusion urged by Perry–that the witnesses fabricated testimony regarding seeing him at his home prior to the execution of the search warrant engaging in what appeared to be drug transactions–is not attributable to deficient representation on the part of counsel. Additionally, any alleged deficiency did not prejudice Perry's defense where, in addition to the testimony regarding the surveillance of Perry's home, substantial evidence of Perry's drug dealing activity was presented to the jury, including the previously noted three controlled drug buys from Perry, the 373.5 grams of marijuana found in Perry's kitchen, and Perry's written statement to law enforcement admitting he sold marijuana and a small amount of powder.

### 5. Use of Confidential Informant

Finally, Perry contends that counsel failed to properly challenge the use of the government's confidential informant for the purpose of establishing any trafficking on the part of Perry, specifically, any "hand to hand" transaction or presence of a firearm during the informant's period of observation. Pet'r's Mem. at 22-24. Perry argues that his counsel failed to properly challenge the search warrant on the grounds that is was a "general warrant" and failed to press for production of the confidential informant who provided the basis for the warrant. Perry also argues that during the trial the government, in argument, told the jury that a reliable, confidential informant personally observed cocaine and crack prepared in Perry's home, but that no witness actually testified as such.

Perry's counsel filed a motion to suppress evidence, specifically arguing at length that the search warrant was a general warrant lacking in the requisite particularity with respect to places to be searched and things to be seized. Suppression Hr'g Tr. [DE-102] 3:21-4:15;11:18-16:16; 22:14-23:13. However, the court rejected counsel's argument, id. 23:14-17; Trial Tr. [DE-103] 3:16-9:16,

16

and the Fourth Circuit affirmed the court's ruling on appeal, *Perry*, 560 F.3d at 251-52.

With respect to the confidential informant, Perry's counsel stated at the suppression hearing that he had no information and nothing had been brought to his attention that there was any issue of whether the informant actually existed, and Perry has presented no evidence to cast doubt on the existence of the confidential informant. Suppression Hr'g Tr. [DE-102] 22:14-16. Furthermore, Perry was charged with three counts of distribution based on three controlled buys made by a *different* confidential informant, who did testify at trial, and three counts related to the drugs and firearms found during the search of Perry's house. The Fourth Circuit rejected the notion that the search warrant was unsupported by probable cause based on the informant's failure to observe marijuana or firearms in Perry's house. *See Perry*, 560 F.3d at 251-52. Therefore, the testimony Perry asserts his counsel should have elicited–whether the confidential informant saw firearms, scales, a surveillance system or other indicia of drug trafficking at Perry's home–would have been immaterial to the outcome of the suppression hearing or the trial.

With respect to the alleged statement by the government's counsel regarding what the confidential informant observed, there appears to be no such statement in the trial transcript, and Perry has failed to direct the court to the statement. However, it is noted that the opening and closing arguments of the parties are omitted from the trial transcript. *See* Trial Tr. [DE-104] 11:17-12:4; [DE-107] 10:12-11:13. Even assuming such a statement was made, Perry has failed to establish prejudice to his defense for the same reasons stated above with respect to counsel's failure to challenge the existence of the confidential informant. Accordingly, Perry has failed to demonstrate prejudice from the alleged ineffective assistance of counsel.

In sum, Perry has failed to state a claim for ineffective assistance of counsel. The record

17

supports neither that counsel's representation was deficient, nor that the allegedly deficient performance prejudiced the defense as required by *Strickland*. Accordingly, it is recommended that the government's motion to dismiss Perry's petition be allowed.

### C.     Motion to Compel

On June 27, 2012, Perry filed a motion to compel in which he sought copies of all motions and other filings against him in this case. Mot. to Compel [DE-166]. Perry's motion was specifically based on his failure to receive the government's motion to dismiss. *Id.* On June 29, 2012, the government filed a certificate of service indicating that "on June 6, 2012, a Motion for Extension of Time and a Motion to Dismiss with Supporting Memorandum of the United States of America was served upon Derrick J. Perry" and that "[i]n order to ensure that Mr. Perry is properly served, another copy of the June 6, 2012, Motion for Extension of Time and Motion to Dismiss with Supporting Memorandum is being mailed to him . . . ." Gov't's Cert. of Serv. [DE-167]. Perry ultimately received the government's motion, as evidenced by his filing of a response thereto. [DE-168]. Accordingly, the motion to compel is denied as moot.

### D.     Motion for New Trial and Appointment of Attorney

Perry filed a motion for a new trial, appointment of an attorney, and discovery pursuant to Rules 16, 33, and 44 of the Federal Rules of Criminal Procedure, 28 U.S.C. § 1738, and the Fifth Amendment. [DE-170]. Perry contends that the government committed a *Brady* violation by suppressing the existence of a July 19, 2006 order issued by the Franklin County Superior Court dismissing with prejudice charges 04-CRS-51466 and 04-CRS-51467 based on the state's failure to obtain an indictment. [DE-170-1]. Perry further contends that this dismissal was entitled to res judicata effect in the present case.

18

It is well-established in this circuit that, in analyzing whether newly discovered evidence requires a new trial, the court must consider five factors:

> (1) The evidence must be, in fact, newly discovered, i.e., discovered since the trial;
>
> (2) Facts must be alleged from which the court may infer diligence on the part of the movant;
>
> (3) The evidence relied on must not be merely cumulative or impeaching;
>
> (4) It must be material to the issues involved; and
>
> (5) It must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993)(quoting *United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir. 1987)). "Without ruling out the possibility that a rare example might exist, we have never allowed a new trial unless all five elements were established." *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001).

*United States v. Horton*, No. 5:08-CR-60-1F, 2011 WL 666250, at \*2 (E.D.N.C. Feb. 14, 2011),

*aff'd*, 693 F.3d 463 (4th Cir. 2012).

First, as Perry points out in his motion, the government acknowledged at the suppression hearing, in an exchange with Perry during his testimony, that the state charges against Perry had been dropped or dismissed. Suppression Hr'g Tr. [DE-102] 75:3-18. It is evident that at the time of trial Perry was himself aware that the charges had been dismissed and, thus, unclear how the government "suppressed" evidence of the dismissal. Thus, Perry cannot meet the first element–that the evidence is newly discovered since the trial.

Next, there appears to be no authority for Perry's claim that the dismissal of state court charges, presumably based on some of the same conduct charged in the federal indictment, has a res judicata effect in this case. Perry bases his res judicata argument on 28 U.S.C. § 1738, which

requires "federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* at n.6 (citations omitted). Perry has cited no case law standing for the proposition that, pursuant to § 1738, a judgment on state charges has a res judicata effect with respect to federal charges based on the same conduct. Furthermore, the United States was neither a party to the state court action, nor in privity with the state, which is necessary for the application of res judicata. *See United States v. Luros*, 243 F. Supp. 160, 168-69 (N.D. Iowa 1965) ("The doctrines of res judicata and collateral estoppel apply only to actions involving the same parties. The United States was not a party to the California prosecution, and its power to enforce its criminal laws cannot be affected by the decision of a state court in a case to which it was not a party.") (citing *Smith v. United States*, 243 F.2d 877 (6th Cir. 1957)).

To the extent Perry attempts to make a double jeopardy argument based on the prior state prosecution, the argument lacks merit.

[T]he Supreme Court has continually held that federal and state crimes are not the same offense, no matter how identical the conduct they proscribe. *See, e.g.*, *Heath v. Alabama*, 474 U.S. 82, 88–89, 106 S. Ct. 433, 88 L. Ed. 2d 387 (1985); *Abbate v. United States*, 359 U.S. 187, 194–96, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 382, 43 S. Ct. 141, 67 L. Ed. 314 (1922); *Moore v. Illinois*, 55 U.S. (14 How.) 13, 19–20, 14 L. Ed. 306 (1852). "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Lanza*, 260 U.S. at 382, 43 S. Ct. 141.

*United States v. Alvarado*, 440 F.3d 191, 196 (4th Cir. 2006). Thus, Perry has failed to show that the newly discovered evidence would probably produce an acquittal at a new trial.

Finally, for the reasons previously stated, Perry is not entitled to counsel in this action. Accordingly, it is recommended that Perry's motion for a new trial and for appointment of counsel be denied.

## IV. CONCLUSION

Based on the foregoing, Perry's motion to compel [DE-166] and motion for leave to file an amendment to the § 2255 petition and for appointment of counsel [DE-178] are DENIED and it is RECOMMENDED as follows:

(1) that Perry's motion [DE-151] under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence be DENIED;

(2) that the government's motion to dismiss [DE-159] Perry's § 2255 petition be GRANTED; and

(3) that Perry's motion for a new trial and for appointment of counsel [DE-170] be DENIED.

SO ORDERED AND SUBMITTED, this the *1* day of November 2013.

Robert B. Jones, Jr.
United States Magistrate Judge